Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermabuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanlaw.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*
GREG SHAFFMASTER

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GREG SHAFFMASTER on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BARRICK GOLDSTRIKE MINES INC.; BARRICK GOLD CORPORATION; and DOES 1-50,<br><br>    Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>1) Interference with Family Medical Leave Act Rights in Violation of 29 U.S.C § 2601 *et seq.*;<br><br>2) Failure to Pay Overtime at the Correct Rate in Violation of 29 U.S.C. § 207;<br><br>3) Failure to Pay Overtime at the Correct Rate in Violation of NRS 608.018 and 608.140; and<br><br>4) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050.<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff GREG SHAFFMASTER ("Plaintiff") on behalf of himself and all others similarly situated and alleges the following:

All allegations in this Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff named herein and his counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over the federal claims alleged herein. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). More specifically, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), states in relevant part that "[a]n action to recover [such liability] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Likewise, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2617(a)(2), states in relevant part that "[a]n action to recover the damages or equitable relief prescribed in paragraph (1) may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of . . . the employees and other employees similarly situated."

2. This Court has supplemental jurisdiction over the state law claims alleged herein as arising from the same transaction or occurrence, i.e., the failure to pay overtime at the correct rate, as more fully set forth hereinafter.

3. Because Plaintiff's claims under the FLSA and FMLA arise under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's Nevada state law claims because those claims derive from a common nucleus of operative fact regarding Defendants' unlawful treatment of Plaintiff and similarly situated employees, and form part of the same case and controversy.

4. This Court also has jurisdiction under Nevada Revised Statutes, NRS § 608.050(1) and (2), which state:

> Whenever an employer of labor shall discharge or lay off his or its employees without first paying them the amount of any wages or salary then due them, in cash and lawful money of the United States, or its equivalent, or shall fail, or refuse on demand, to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

contract of employment, whether employed by the hour, day, week or month, each of his or its employees may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default, until he is paid in full, without rendering any service therefor; but he shall cease to draw such wages or salary 30 days after such default. Every employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as he would have been entitled to had he rendered services therefor in the manner as last employed.

5. The State of Nevada has created a cause of action for such wages and attorney's fees pursuant to NRS 608.140, entitled "Assessment of attorney's fees in action for recovery of wages," which states "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his employment, and shall establish by decision of the court or verdict of the jury that the amount for which he has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit." Plaintiff has sent such a demand.

6. Plaintiff also claims a private cause of action to foreclose a lien against the property owner for wages due pursuant to NRS 608.050.

7. Federal law provides additional bases for attorney fees and costs in actions under the FLSA and FMLA. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); 29 U.S.C. § 2617(a)(2) ("The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.").

8. Venue is proper in this Court because many of the acts complained of herein occurred in this district, because Plaintiff was employed by Defendants to work in this district, and because Defendants own and operate large mining facilities in this district.

/ / /

/ / /

## PARTIES

9. Plaintiff GREG SHAFFMASTER is a natural person who is and was a resident of the State of Nevada at all relevant times herein and was employed by Defendant as a non-exempt hourly employee at Defendants' Goldstrike Mine in Eureka County, Nevada from on or about December 2014 to August 2016.

10. Defendant BARRICK GOLDSTRIKE MINES INC. (hereinafter "Defendant" or "Barrick Goldstrike") is a foreign corporation incorporated in the state of Colorado, with a principal place of business at 905 West Main Street, Elko, Nevada 89801. Barrick is an employer engaged in commerce under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq. and is an employer under NRS 608.011.

11. Defendant BARRICK GOLD CORPORATION (hereinafter "Defendant" or "Barrick Corp.") is a foreign corporation incorporated in the Canadian province of Ontario, with a principal place of business in Brookfield Place, TD Canada Trust Tower 161, Bay Street, Suite 3700, Toronto, Canada M5J 2S1. Barrick Corp. regularly conducts significant economic activity in the United States. Barrick Corp. is traded on the New York Stock Exchange, operates several large mining facilities in the United States, including the Goldstrike Mine in Elko, Nevada, and maintains offices throughout the United States, including at least two corporate offices in Nevada, located at 905 West Main Street, Elko, Nevada 89801, and 2270 Corporate Circle, Suite 100, Henderson, Nevada 89074. Barrick Corp. is an employer engaged in commerce under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq. and is an employer under NRS 608.011.

12. The identity of DOES 1-50 is unknown at this time and this Complaint will be amended at such time when the identities are known to Plaintiff. Plaintiff is informed and believes that each Defendant sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," "Barrick Goldstrike," or "Barrick Corp." herein shall mean "Defendants and each of them."

/ / /

/ / /

**FACTUAL ALLEGATIONS**

13. Plaintiff was employed by Defendants as a Warehouse Lead at their Goldstrike Mine in Eureka County, Nevada from on or about December 4, 2014 to on or about August 2, 2016.

14. Plaintiff was an hourly paid non-exempt employee who earned $24.75 for each hour worked for Defendants, excluding production bonuses and overtime premium payments.

15. Plaintiff was scheduled for, and regularly worked, at least 4 shifts per week, 10 hours per shift, and 40 hours per workweek. Plaintiff regularly worked Tuesday through Friday, 6:30 a.m. to 4:30 p.m.

16. Defendant Barrick Corp. is an international corporation headquartered in Toronto, Canada, and is the leading gold mining company in the world in terms of production, reserves and market capitalization.

17. Barrick Corp. currently owns and operates five mining projects in the United States, including: (1) the Cortez Gold Mine in Nevada, (2) the Golden Sunlight mine in Montana, (3) the Goldstrike mine in Nevada, (4) the Donlin Gold Project in Alaska, and (5) the Turquoise Ridge gold mine in Nevada.

18. In its Goldstrike and Cortez mines alone, Barrick Corp. employs more than 3000 employees. These operations utilize both open pit and underground mining methods, and host a range of processing facilities including heap leaching, roasting, autoclaving, conventional leaching and thiosulfate (cyanide-free) leaching. The Goldstrike and Cortez mines each produced over one-million ounces of gold in 2016, rendering them among the largest gold mines in the world.

19. Defendant Barrick Goldstrike is a wholly owned and operated subsidiary of Barrick Corp.

20. Barrick Corp. is both a direct employer of employees at its various mining projects and is a joint-employer with subsidiaries such as Barrick Goldstrike. Together, these entities work together in exercising control over the hours and other working conditions of Plaintiff and all similarly-situated hourly employees.

21. Barrick Corp. maintains and enforces company-wide policies regulating standards for employee conduct, hours, working conditions, and compliance with legal requirements and ethical mandates. For example, Barrick Corp. maintains a Code of Business Conduct and Ethics that "has been adopted by our Board of Directors and applies to every Barrick employee, including the President, other senior executives and financial officers, and members of our Board." *See* Code of Business Conduct and Ethics (hereinafter, "Code"), p. 5, http://barrick.q4cdn.com/808035602/files/governance/Barrick-Code-of-Business-Conduct-and-Ethics.pdf (last visited February 4, 2018).

22. Barrick Corp.'s Code applies to all employees and regulates employee conduct on a uniform, company-wide basis in connection with a wide variety of issues. *See*, *e.g.*, *id.*; Code at p. 3 ("This Code applies to all of us who work for Barrick, whether you are a director, officer, employee, contractor, or third party vendor. It sets forth core principles that govern our work, and identifies the many resources available to help you understand how these principles relate to your job."), p. 5 ("Being a responsible company means upholding the highest ethical standards and complying with all applicable laws and regulations, industry practices and international norms, as well as this Code and all other Barrick policies or requirements."), p. 20 ("We all have a responsibility to prevent a violation of this Code.").

23. Defendants' Code sets forth terms and conditions of employment for all of Defendants' employees and forms part of the employees' employment agreement with Defendants. Indeed, as an explicit "condition of employment," Defendants require all employees to sign and agree in writing to the terms and conditions set forth in the Code:

> Once each year, as a condition of employment, you may be asked to acknowledge that you have received Code of Conduct training, understand its rules, and are not aware of any unreported violations of the Code. New employees will sign an acknowledgement that they have received, read and understand the Code, and undertaken relevant training when they start with the company.
>
> These acknowledgements serve to confirm that employees have reviewed and understand the Code, agreed to comply with it and report concerns about Code violations, and that they are unaware of

potential actions that run afoul of the Code that have not already been reported. (Code, p. 19.)

24. One of the terms of employment set forth in the Code is that both Defendants and their employees will follow all applicable laws and regulations. *See*, Code, p. 19 ("It is vital that we respect the legal institutions in every jurisdiction where we do business and follow all applicable laws, rules, and regulations. This is something that applies to all of us, including every director, officer, employee and contractor."), *id.* ("Relevant laws must be followed all the time."), p. 5. ("[W]e have a duty to understand and follow the Code and all laws, regulations and company policies that apply to our jobs."), p. 6 ("[W]e all have an obligation to prevent improper conduct ["including . . . unlawful activities"] from occurring.").

25. Defendants inform employees that violations of the Code, including violations of any applicable statutes, regulations, or other legal authority, may give rise to unspecified "contractual remedies." Code, p. 8. The code provides a specific "Example of Retaliation," and promises employees that Defendants will comply with applicable laws forbidding retaliation against an employee for reporting certain illegal activities. *Id.*

### Defendants' Failure to Pay Overtime at the Correct Rate

26. Defendants' agreement with its employees includes, both expressly and implicitly, an agreement to comply with all state and federal laws, and includes as a term and condition of employment that Defendants will pay overtime premiums to employees as required by the FLSA.

27. Defendants agreed to pay Plaintiff and similarly situated employees an overtime premium of one and one-half times their "regular rate" for hours worked in excess of forty hours in a workweek.

28. Defendants agreed to pay Plaintiff and similarly situated employees overtime in accordance with 29 U.S.C. Section 207(e), which states that "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee" (with certain exceptions not relevant here) divided by the hours worked.

29. Defendants paid Plaintiff and Class Members production bonuses and/or other non-discretionary payments without including the amount paid for these bonuses and/or other

non-discretionary payments in the regular rate for purposes of calculation of overtime payment due.

30. For example, in the last full workweek in June 2016, from June 19th to June 25th, Plaintiff is informed and believes that he worked more than 40 hours of work during that week and was thus due overtime premiums. During the yearly quarter including the week of June 19th to June 25th, Plaintiff received a non-discretionary production bonus. This non-discretionary production bonus should have been included in Plaintiff's regular rate for purposes of calculation of overtime payment due, but was not. Defendants thus owe Plaintiff unpaid overtime wages for this time.

31. By failing to include bonuses and other non-discretionary payments in the total sum earned before dividing by hours worked, Defendants failed to pay the correct hourly rate for overtime hours worked.

32. Upon information and belief, all other Class Members employed by Defendants were paid in the same manner.

### Defendants' Interference with Plaintiff's Rights Under the FMLA

33. Defendants employ more than 50 employees within a 30-mile radius of Plaintiffs' place of employment.

34. Plaintiff worked for Defendants for over one year and worked more than 1,250 hours in the year preceding his request for leave under the FMLA.

35. In or around summer of 2014, Plaintiff's father, Dave Shaffmaster ("Mr. Shaffmaster"), underwent knee surgery. Mr. Shaffmaster's knee surgery required inpatient treatment in a hospital for over one month, during which time he was completely incapacitated.

36. Following his hospital stay, Mr. Shaffmaster's recovery and related complications required numerous and frequent subsequent treatments and caused periods of both episodic and chronic incapacity.

37. Plaintiff requested leave under the FMLA to care for his father on several occasions, beginning in late 2015 and continuing through Plaintiff's termination in August 2016.

38.     On or around November 25, 2015, Plaintiff's father collapsed in his home as a result of nerve damage caused by spinal compression, which was determined to be a complication of his surgery. The nerve damage rendered Plaintiff's father unable to control his bodily functions, and he was unable to get up or seek medical attention during the incident.

39.     Plaintiff lives with his father and discovered his father on the floor that morning, bleeding and unable to move. Plaintiff immediately called 911 and also informed Defendants of the medical situation and need to care for his father during the emergency.

40.     Later that day, Plaintiff asked Defendants about his rights under the FMLA related to his father's condition. Defendants did not provide Plaintiff with information or documents regarding his rights and obligations under the FMLA, but instead told Plaintiff that he would be allowed to use accrued vacation time to care for his father.

41.     For the next nine months, Mr. Shaffmaster required daily physical therapy and saw numerous doctors and specialists, including in-person doctor visits approximately once per week, to diagnose and treat his complications and condition. Mr. Shaffmaster was completely incapacitated and could not work or perform other regular daily activities throughout the duration of this period.

42.     During this extended period of incapacity, Mr. Shaffmaster suffered several medical incidents that required immediate emergency assistance.

43.     One such incident occurred on December 28, 2015. That morning, Plaintiff again found his father collapsed on the floor. Plaintiff immediately notified Defendants that his father had suffered another medical emergency, and further notified Defendants that Plaintiff needed to care for his father pending the arrival of emergency medical personnel. Mr. Shaffmaster was hospitalized as a result of this incident.

44.     Following the December 28, 2015 incident, Plaintiff again asked Defendants about his rights under the FMLA. Defendants informed Plaintiff that they would look into it and let him know. However, Defendants never provided Plaintiff any information or documents regarding his rights or obligations under the FMLA.

45. Plaintiff's absence on December 28, 2015 should have been covered by the FMLA. Instead, however, Defendants formally disciplined Plaintiff for taking time to care for his father that day.

46. Throughout the first few months of 2016, Mr. Shaffmaster continued to suffer a series of incidents that required immediate care from Plaintiff.

47. Defendants did not inform Plaintiff of his rights under the FMLA relating to these incidents, but instead merely informed him that he could take accrued paid time off to care for his father. By April 2016, Plaintiff had used up all of his accrued paid time off caring for his father.

48. On April 23, 2016, Mr. Shaffmaster again collapsed and, bleeding and unable to move, required emergency medical assistance. Plaintiff immediately notified Defendants of the situation and stayed home from work to care for his father through the emergency.

49. Because Plaintiff had already used all of his accrued paid time off caring for his father prior to the April 23, 2016 emergency, Plaintiff again asked if he could take time under the FMLA for the time spent caring for his father during the emergency. Again, Defendants failed to provide Plaintiff with any information or documents regarding his rights under the FMLA.

50. On July 28, 2016, Mr. Shaffmaster again collapsed and required immediate medical care. Plaintiff notified Defendants and stayed home from work to care for his father.

51. Following the July 28, 2016 incident, Defendants again formally disciplined Plaintiff and informed him that he would be terminated based on disciplinary points assessed for his absences, which were taken to provide emergency care for his incapacitated father.

52. During this discussion, Plaintiff reiterated that he had only taken the time away from work to care for his father during the above-mentioned medical emergencies and asked Defendants why he could not take leave under the FMLA. Defendants refused to provide Plaintiff with any information or documents regarding his rights under the FMLA and refused to reconsider the disciplinary points assessed for Plaintiff's medically caused absences. Instead, Plaintiff was told to gather his things and leave the premises.

///

///

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

53. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

54. Plaintiff brings this action on behalf of himself and all other similarly situated and typical employees as both a collective action under the FLSA and a true class action under Nevada law.

55. The statute of limitations under the FLSA is 3 years for willful violations.

56. The statute of limitations for liability created by Nevada statute is 3 years.

57. The FLSA Class is defined as follows: **All persons who were employed by Defendants as non-exempt hourly employees at any time during the applicable statute of limitations time periods who received non-discretionary bonus payments from Defendants that were not factored into their regular rate for purposes of calculation of overtime payment due.** The Nevada Class shall include the following sub-class:

58. The Nevada Class is defined as follows: **All persons who were employed by Defendants within the State of Nevada as non-exempt hourly employees at any time during the applicable statute of limitations time periods who received non-discretionary bonus payments from Defendants that were not factored into their regular rate for purposes of calculation of overtime payment due.** The Nevada Class shall include the following sub-class:

    A. Wages Due and Owing Sub-Class: All members of the Nevada Class who are former employees.

59. With regard to the conditional certification mechanism under the FLSA, Plaintiff is similarly situated to the individuals he seeks to represent for the following reasons, among others:

    A. Defendants employed Plaintiff and all other similarly situated non-exempt hourly employees pursuant to a uniform policy and agreement, expressed in writing and imposed by law, to comply with all state and federal laws, including payment of overtime premiums to employees at the correct overtime rate. Defendants failed to pay Plaintiff

overtime premium pay of one and one-half his regular rate of pay for all hours worked over forty (40) hours in a workweek.

      B.      Plaintiff's situation is similar to those he seeks to represent because Defendants failed to pay Plaintiff and all other Class Members overtime premiums at the correct rate.

      C.      Common questions of fact and law exist as to whether Defendants failed to pay Plaintiff and Class Members one and one-half times their correct regular rate for all hours worked in excess of 40 hours a week.

      D.      Upon information and belief, Defendants employ, and have employed, in excess of 1,000 Class Members within the applicable statute of limitations periods.

      E.      Defendants have known or should have known their policies alleged herein were unlawful and that they owe employees this money, and have willfully failed to pay their employees properly. Defendants repeatedly emphasize to their employees the importance of following wage and hour laws, recognize their own responsibility to do so, and reassure their employees that they are closely monitoring their obligations and compliance through an in-house legal department. Upon information and belief, Defendants' actions or omissions giving rise to this complaint were not in good faith and/or were not based upon an informed, reasonable belief that Defendants' behavior was lawful.

60.     Pursuant to the decision of the Ninth Circuit Court of Appeals in *Busk v. Integrity Staffing Solutions, Inc.*, 2013 U.S. App. LEXIS 7397 (9th Cir. Nev. Apr. 12, 2013), both opt-in collective or representative treatment of claims under the federal FLSA and FRCP Rule 23 Class treatment of pendant state law claims may be maintained in the same action. FRCP Rule 23(b)(3) Class treatment for all non-FLSA claims alleged in this complaint is appropriate in this case for the following reasons:

      A.      <u>The Nevada Class and Sub-Class are Sufficiently Numerous</u>: Upon information and belief, Defendants employ, and have employed, in excess of 1,000 Class Members within the applicable statute of limitations period.

B. <u>Plaintiff's Claims are Typical to Those of Fellow Class and Sub-Class Members</u>: Each Class Member and Sub-Class Member is and was subject to the same practices, plans, or policies as Plaintiff—i.e., Defendants failed to pay all Class Members at the correct overtime rate.

C. <u>Common Questions of Law and Fact Exist</u>: Common questions of law and fact exist and predominate as to Plaintiff and the Nevada Class and Sub-Class, including, for example, whether Defendants failed to pay Plaintiff and Class Members one and one-half times their correct regular rate for all hours worked in excess of 40 hours a week.

D. <u>Plaintiff is an Adequate Representative of the Nevada Class and Sub-Class</u>: Plaintiff will fairly and adequately represent the interests of the Nevada Class and Sub-Class because Plaintiff is a member of the all classes, he has issues of law and fact in common with all members of the classes, and he does not have interests that are antagonistic to any class members.

E. <u>A Class Action is Superior/Common Claims Predominate</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Nevada Class and Sub-Class is impractical, and common claims of whether Defendants failed to pay Plaintiff and Class Members one and one-half times their correct regular rate for all hours worked in excess of 40 hours a week predominate over individual issues. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual members of the Nevada Class and Sub-Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

/ / /

/ / /

**FIRST CAUSE OF ACTION**

Interference with Rights in Violation of 29 U.S.C § 2601 et seq.

(On Behalf of Plaintiff Individually Against Defendants)

61. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

62. At all times relevant to this Complaint, Defendant was a covered employer under the Family and Medical Leave Act ("FMLA"), as it was engaged in an industry affecting commerce and it employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

63. Plaintiff was covered under the FMLA as an eligible employee employed by Defendant for at least twelve months who had performed at least 1,250 hours of service during the previous twelve-month period. *Id*. § 2611(2).

64. Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id*. § 2615(a).

65. The FMLA's "prohibition against interference" prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220(c).

66. "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id*.

67. Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id*. § 825.220(b); 29 U.S.C. § 2617.

68. The statute of limitations for willful violations of the FMLA is "3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2).

69. Defendants discriminated against Plaintiff in violation of the FMLA by refusing to provide Plaintiff with any information regarding his rights under the FMLA, by refusing to provide Plaintiff with FMLA-protected leave to care for his father, and by ultimately terminating Plaintiff for taking such leave.

70. Defendants' actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

71. Plaintiff has suffered damages as a result of Defendants' unlawful actions.

## SECOND CAUSE OF ACTION

Failure to Pay Overtime Wages at the Correct Rate in Violation of the FLSA, 29 U.S.C. § 207

(On Behalf of Plaintiff and the FLSA Class Against Defendants)

72. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

73. 29 U.S.C. Section 207(a)(1) provides as follows: "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

74. 29 U.S.C. Section 207(e) defines the regular rate "at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee" (with certain exceptions not relevant here) divided by the hours worked.

75. By failing to include bonuses and other non-discretionary payments in the total sum earned before dividing by hours worked, Defendants failed to pay the correct hourly rate for overtime hours worked.

76. Defendants' unlawful conduct has been widespread, repeated, and willful. Defendants knew or should have known that its policies and practices have been unlawful and unfair.

77. Wherefore, Plaintiff demands for himself and for all others similarly situated that Defendants pay and reimburse Plaintiff and all members of the FLSA Class at the correct overtime rate of one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## THIRD CAUSE OF ACTION

Failure to Pay Overtime Wages at the Correct Rate in Violation of NRS 608.140 and 608.018

(On Behalf of Plaintiff and the Nevada Class Against Defendants)

78. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

79. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

80. NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

81. NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

82. By failing to include non-discretionary bonuses into the regular rate of pay in calculating the overtime rate, Defendants failed to pay Plaintiff and Nevada Class Members at the correct overtime rate for hours worked in excess of forty (40) hours in a week in violation of NRS 608.140 and 608.018.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

83. Although the statute of limitations for minimum wage violations is two years, there is no express statute of limitations for violations for failure to pay overtime rates of pay pursuant to NRS 608.140 and 608.018 and, therefore, the three-year statute contained in NRS 11.190(3) for statutory violations applies.

84. Wherefore, Plaintiff demands for himself and for Class Members that Defendants pay Plaintiff and Class Members one and one-half times their "regular rate" of pay for all hours worked in excess of forty (40) hours a workweek during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

## FOURTH CAUSE OF ACTION

Failure to Timely Pay All Wages Due and Owing Upon Termination Pursuant to NRS 608.140 and 608.020-.050

(On Behalf of Plaintiff and the Wages Due and Owing Sub-Class Against Defendants)

85. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

86. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

87. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

88. NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

89. NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid

in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

90. By failing to pay Plaintiff and Sub-Class Members (who are all former employees) at the correct overtime rate, Defendants have failed to timely remit all wages due and owing to Plaintiff and Sub-Class Members at the termination of their employment.

91. Despite demand, Defendants willfully refuse and continue to refuse to pay Plaintiff and Sub-Class Members all the wages that were due and owing upon the termination of their employment.

92. Wherefore, Plaintiff demands thirty (30) days wages under NRS 608.140 and 608.040, and an additional thirty (30) days wages under NRS 608.140 and 608.050, for all Sub-Class Members who have terminated employment from Defendants during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

## PRAYER FOR RELIEF

Wherefore Plaintiff, by himself and on behalf of all Class Members, prays for relief as follows relating to his individual, collective action, and class action allegations:

1. For an order conditionally certifying this action under the FLSA and providing notice to all members of the Class so they may participate in this lawsuit;
2. For an order certifying this action as a traditional class action under Nevada Rule of Civil Procedure Rule 23 for all other claims presented in this complaint;
3. For an order appointing Plaintiff as the Representatives of the Class and their counsel as Class Counsel;
4. For damages according to proof for regular rate pay for all hours worked;
5. For damages according to proof for overtime compensation under federal law;
6. For lost wages resulting from Defendants' FMLA violations;
7. For liquidated damages;
8. For interest as provided by law at the maximum legal rate;
9. For reasonable attorneys' fees authorized by statute;
10. For costs of suit incurred herein;

11. For pre-judgment and post-judgment interest, as provided by law, and

12. For such other and further relief as the Court may deem just and proper.

DATED: May 3, 2018

/s/ *Joshua R. Hendrickson*
Joshua R. Hendrickson
*Of Counsel*
Mark R. Thierman
Joshua D. Buck

*Attorneys for Plaintiff*